**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**FOR THE COUNTY OF CLARK**

| | |
|---|---|
| NATHEN BARTON,<br>Plaintiff<br><br>v.<br><br>PINNACLE HOME IMPROVEMENTS, LLC, & JOHN DOE 1-10<br>Defendants. | Case No.:<br><br>COMPLAINT FOR A CIVIL CASE AND INJUNCTIVE RELIEF<br><br>Jury Trial: ☒ Yes ☐ No |

## I. BASIS FOR JURISDICTION

1. Plaintiff Nathen Barton is a natural person and full-time resident of Clark County, Washington. All or nearly all the calls alleged in this complaint were received in Clark County, Washington State, during the year 2023.

2. Jurisdiction in this court is correct because of where Plaintiff resides, and his residence is a nexus where Plaintiff suffered personal injury and invasion of privacy at the hands of the Defendants. Defendants were aware they were reaching into Washington State.


NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

## II. INTRODUCTION

3. Text messages grab our attention. According to the "#1 Mass Text Marketing Software" maker Tatango, over 99% of recipients read at least some of telemarking text messages[1].

4. Although the generally TCPA prohibits unsolicited telemarketing text messages, that 99% read rate is a bright light that attracts the unscrupulous telemarketing moths to fly out of the darkness.

5. 47 CFR § 64.1200(f)(10) defines "Seller" as

6. "The term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

7. 47 CFR § 64.1200(f)(12) defines "Telemarketer" as

8. "The term telemarketer means the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."

9. In this lawsuit, John Doe is the Telemarketer and Pinnacle Home Improvements, LLC is the Seller. Pinnacle Home Improvements, LLC may also be the Telemarketer.

## III. THE PARTIES TO THE LITIGATION

10. Plaintiff Nathen Barton resides at 4618 NW 11th Cir, Camas WA 98607, inside the bounds of Clark County, Washington State.

11. Defendant Pinnacle Home Improvements, LLC ("Pinnacle") is a Georgia State registered company with a principal address of 1220 Old Alpharetta RD, Suite 310, Alpharetta GA 30005. Pinnacle has registered agent James Marino at the same address.

12. Defendant John Doe 1 is an unknown entity that acted as an agent of Pinnacle who substantially assisted Pinnacle in initiating the text messages sent to Barton.

---

[1] See https://www.tatango.com/blog/sms-open-rates-exceed-99/

## IV. STATEMENT OF CLAIM

13. Plaintiff is the registered subscriber for a cell phone number. The phone number is used as a residential phone line and paid for by Barton. He is not reimbursed for the service fee.

14. The phone number is primarily used for residential purposes. Plaintiff registered the phone number on the FTC national-do-not-call list more than 30 days prior to each phone call at issue in this litigation. This is the phone number that received the calls/text messages in this lawsuit.

15. "We now hold that the owner and subscriber of a phone with a number listed on the Do-Not-Call Registry has suffered an injury in fact when unsolicited telemarketing calls or texts are sent to the number in putative violation of the TCPA." *Hall v. Smosh Dot Com*, No. 22-16216, 4 (9th Cir. Jun. 30, 2023).

16. The FCC "presumes that wireless subscribers who ask to be put on the National Do Not Call Registry are residential subscribers."[2], see *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195 (D. Mass. 2021)[3]; *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189 (D.N.M. 2019)[4]; *Mantha v. QuoteWizard.com*, CIVIL 19-12235-LTS (D. Mass. Feb. 3, 2022)[5]; *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648 (W.D. Tenn. 2020).[6]

---

2 https://www.fcc.gov/document/rules-and-regulations-implementing-telephone-consumer-protection-act-22, open the Report and Order, top paragraph of page 03-153.

3 https://casetext.com/case/barton-v-temescal-wellness-llc

4 https://casetext.com/case/mohon-v-agentra-llc

5 https://casetext.com/case/mantha-v-quotewizardcom-4

6 https://casetext.com/case/stevens-bratton-v-trugreen-inc-3



NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

17. This Federal Circuit has given deference to the FCC's interpretation of the TCPA. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012)[7], *Satterfield v. Simon Schuster*, 569 F.3d 946 (9th Cir. 2009)[8],

18. The Defendants did not have Plaintiff's consent to initiate any telemarketing calls to Plaintiff's phone number. Barton did not ask for new windows or window repair. Barton never heard the Defendant before they injected themselves into his life.

19. Pinnacle acquired a "Lead" for a Melissa Porter.

20. The phone number associated with the Lead was Barton's.

21. It is the phone number that is the subject of this lawsuit.

22. Pinnacle claims the Lead was generated from an IP address in Tucker, Georgia.

23. Pinnacle claims the Lead was generated on 9/23/2023.

24. This is a day that Barton did not have internet or phone service.

25. Then they themselves or their agent dialed Barton's number to solicit him window related goods and services.

26. They have had enough complaints from Leads they previously purchased that they had good reason to suspect the Barton lead was also fake. Further, Barton told Pinnacle to stop calling and they did not stop.

27. "We have held that the receipt of unsolicited phone calls or text messages in violation of the TCPA is "a concrete injury in fact sufficient to confer Article III standing." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); see also *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1117-18 (9th Cir. 2022); *Chennette v.*

---

7 https://casetext.com/case/chesbro-v-best-buy-stores-lp-2

8 https://casetext.com/case/satterfield-v-simon-schuster-inc


NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

*Porch.com, Inc.*, 50 F.4th 1217, 1222 (9th Cir. 2022). That is because "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients." *Van Patten*, 847 F.3d at 1043." *Hall.*

**Unsolicited Text Message #1-2**

28. On 9/24/2023, Defendants initiated or substantially assisted in transmitting a text message to Plaintiff's cell phone from phone number (678) 605-9490. The 286-character message said:

29. "Hi Melissa! Thank you for contacting Pinnacle Home Improvements. I wanted to confirm that your inquiry has been received. Please reply with some details about the project, and I will reach out during our normal business hours. 10am today. If you rather not talk over text reply END."

30. Barton did not inquire with Pinnacle or anyone else by which Pinnacle was invited to text solicit Barton. SMS text messages are limited to 160 characters.[9] Multipart text messages are limited to 153 characters. This text message, while appearing to be a single text, is comprised of two text messages glued together to appear as one.

31. The purpose of the text message was to encourage Plaintiff to purchase window or window replacement related goods or services.

**Unsolicited Text Message #3**

32. On 9/24/2023, Defendants initiated or substantially assisted in transmitting a text message to Plaintiff's cell phone from phone number (678) 605-9490. The message said:

33. "Following up, we would be happy to schedule your free in-home estimate. What's your best availability?"

[9] https://messagemedia.com/us/blog/how-many-characters-in-a-text-message



NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

34. The purpose of the text message was to encourage Plaintiff to purchase window or window replacement related goods or services.

**Unsolicited Text Message #4**

35. On 9/24/2023, Defendants initiated or substantially assisted in transmitting a text message to Plaintiff's cell phone from phone number (678) 605-9490. The message said:

36. "Good Morning! Before we schedule a free window estimate.., How many windows do you need fully replaced?"

37. The purpose of the text message was to encourage Plaintiff to purchase window or window replacement related goods or services.

**Unsolicited Text Message #5**

38. On 9/24/2023, Defendants initiated or substantially assisted in transmitting a text message to Plaintiff's cell phone from phone number (678) 605-9490. The message said:

39. "We help make new windows affordable by offering LOW MONTHLY PAYMENTS." Are you still interested in a window estimate?"

40. The purpose of the text message was to encourage Plaintiff to purchase window or window replacement related goods or services.

**Unsolicited Call Message #6**

41. On 9/25/2023, at 6:08am, Defendants or their agent initiated a call to Plaintiff's cell phone from phone number (423) 806-9807.

42. Plaintiff did not answer the call given the time it was placed, but a call back to this number on 11/14/2023 was greeted with an answering machine.

43. This number belongs to Pinnacle Home Improvements.

44. It has the same on-hold music that Pinnacle uses, and is the same area code as Pinnacle, and Plaintiff received no other calls from this area code in the days around this date. The


NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

purpose of the call was to encourage Plaintiff to purchase window or window replacement related goods or services.

**Unsolicited Text Message #7**

45. On 9/25/2023, at 7am, Defendants initiated or substantially assisted in transmitting a text message to Plaintiff's cell phone from phone number (678) 605-9490. The message said:

46. "Great news! We have a window specialist available this afternoon to quate your project! Would 6pm work for you?"

47. The purpose of the text message was to encourage Plaintiff to purchase window or window replacement related goods or services.

**Unsolicited Call #8**

48. On 9/25/2023, at 9:54am, Defendants or their agent initiated a call to Plaintiff's cell phone from phone number (423) 806-9826.

49. Plaintiff did not answer the call given the time it was placed, but a call back to this number on 11/14/2023 was greeted with an answering machine.

50. This number belongs to a Roxy with Pinnacle Home Improvements.

51. The purpose of the call was to encourage Plaintiff to purchase window or window replacement related goods or services.

**Barton makes Do-Not-Call request #1**

52. At 1:31pm on September 25, 2023, Barton used a reasonable method to ask Pinnacle to put his phone number on their *do-not-call* list.

53. On September 25, 2023, website *www.pinnaclehomeimprovements.com* was branded as Pinnacle Home Improvements.

54. On September 25, 2023, website *www.pinnaclehomeimprovements.com* was branded by Pinnacle Home Improvements LLC.


NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

55. On September 25, 2023, Pinnacle Home Improvements LLC allowed their name to be on website *www.pinnaclehomeimprovements.com*.

56. On September 25, 2023, Pinnacle Home Improvements LLC approved of the content on website *www.pinnaclehomeimprovements.com*.

57. On September 25, 2023, Pinnacle Home Improvements LLC controlled the content on website *www.pinnaclehomeimprovements.com*.

58. On September 25, 2023, Pinnacle Home Improvements LLC controlled what content was displayed on website *www.pinnaclehomeimprovements.com*.

59. On September 25, 2023, Pinnacle Home Improvements LLC controlled the functionality of website *www.pinnaclehomeimprovements.com*.

60. On September 25, 2023, Pinnacle Home Improvements LLC allowed their logo to be on website *www.pinnaclehomeimprovements.com*.

61. On September 25, 2023, Pinnacle owned website *www.pinnaclehomeimprovements.com*.

62. On September 25, 2023, Pinnacle operated website *www.pinnaclehomeimprovements.com*.

63. On September 25, 2023, website *www.pinnaclehomeimprovements.com* had one or more bright orange boxes, prominently displayed to visitors, labeled "Live Chat".

64. On September 25, 2023, there was a different bubble window overlayed on top of a highly visible portion of website *www.pinnaclehomeimprovements.com*.

65. That box said in large, bold text: "Hello. Welcome to Pinnacle Home Improvements! I am a Live Person here to help".

66. Underneath this bold text were three options.

67. The first option was a button titled "Free Quote".



NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

68. The button was in dark blue with bold white text.

69. The second option was titled “I have a question”.

70. This button was light gray with darker blue text.

71. The third option was titled “Other”.

72. This third button was light gray with darker blue text.

73. Underneath this bubble window was the icon of a human man’s face.

74. This was done to lend credibility to Pinnacle’s claim that the chat box was staffed by a live person.

75. Barton selected the button titled “Other”.

76. Upon clicking “Other” the bubble box expanded.

77. In large font the top of the expanded box was titled “Pinnacle Home Improvements”.

78. Directly under this it said: “Chatting with Tony”.

79. Directly under this it said: “This chat transcript will be saved and viewed by Pinnacle Home Improvements and/or those working on its behalf”.

80. Directly under this it said: “Hello. Welcome to Pinnacle Home Improvements! I am a Live Person here to help”.

81. The “Other” Barton clicked on in ¶75 morphed into a line of text under the text in ¶80.

82. That line said “Other”.

83. The chat box repeated “Hello. Welcome to Pinnacle Home Improvements! I am a Live Person here to help”.

84. Tony responded to Barton’s “Other” with “Sure. How may I help you”.

85. Barton responded by giving Tony a message for Pinnacle: “Hello, please put 972 207 5749 on your do not call list. I am in Washington State so can’t use your services.”



NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

86. Tony received the message and communicated to Barton the response: "I understand."

87. On September 25, 2023, Tony was a communications agent for Pinnacle.

88. On September 25, 2023, Tony had Pinnacle's actual authority to act as a communications agent for Pinnacle.

89. On September 25, 2023, Tony had Pinnacle's apparent authority to act as a communications agent for Pinnacle.

90. The Washington State Supreme Court said "[T]he principal is bound by the act of his agent when he has placed the agent in such position that persons of ordinary prudence, reasonably conversant with business usages and customs, are thereby led to believe and assume that the agent is possessed of certain authority, and to deal with him in reliance upon such assumption." *Hartman v. United Bank Card Inc.*[10]

91. By Tony's receiving this message for Pinnacle, Pinnacle itself received the message from Barton at this instant.

92. In this instant, on September 25, 2023, Pinnacle knew Barton was located in Washington State.

93. Tony acquired the information from Barton while acting within the scope of his agency.

94. "The actions of an acknowledged agent are imputed to the principal. *Blake Sand & Gravel, Inc. v. Saxon*, 98 Wn. App. 218, 223 (1999) ("When an agent has actual authority to act on behalf of the principal, the agent's exercise of the authority binds the principal."). Because there is no dispute regarding Denny's authority to act on behalf of "the Wang Group," Wang's argument that the authorization Hull received was ineffective

[10] *Hartman v. United Bank Card Inc.*, CASE NO. C11-1753JLR, 12 (W.D. Wash. Oct. 4, 2012)


NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

because it did not come directly from one or all of the individuals who made up "the Wang Group" is rejected."[11]

95. This is established law in Washington State for 100 years. See Washington State Supreme Court case *Miller v. United Pacific Casualty Ins. Co.*[12]. (The Millers gave an insurance agent information, who in turn failed to correctly apprise his principal of the Miller's situation and an illegal contract for insurance was issued. An accident ensued, the illegal contract surfaced, and the principal tried to disavow the insurance contract. The court ruled that the principal had imputed knowledge of the facts so could not escape the damages).

96. In 1959 the Washington State Supreme Court said in *Chase v. Beard*[13] "Notice to an agent when acting within the scope of the agency is notice to his principal. Knowledge by the agent of facts relating to the agency is deemed knowledge by the principal." (Information given to a husband was imputed to the husband's wife.)

97. See also *Busk v. Hoard*[14] ""Agency is a legal concept which depends upon the existence of required factual elements: . . . The relation which the law calls agency does not depend upon the intent of the parties to create it, nor their belief that they have done so. To constitute the relation, there must be an agreement, but not necessarily a contract, between the parties; if the agreement results in the factual relation between them to which are attached the legal consequences of agency, *an agency* exists although the parties did not call it agency and did not intend the legal consequences of the relation to follow. Thus, when one who asks a friend to do a slight service for him, such as to return for

[11] Wang v. Hull, NO. C18-1220RSL, 3 (W.D. Wash. Jun. 18, 2020)
[12] Miller v. United Pacific Casualty Ins. Co., 187 Wn. 629, 635 (Wash. 1936)
[13] *Chase v. Beard, 55 Wn. 2d 58, 64 (Wash. 1959)*
[14] Busk v. Hoard, 65 Wn. 2d 126, 134 (Wash. 1964)



NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

credit goods recently purchased from a store, neither one may have any realization that they are creating an agency relation or be aware of the legal obligations which result from performance of the service. . . ." . . . Knowledge or notice by or to the agent is imputed to his principal . . . and, in most instances, the time, place or manner in which the agent obtains the knowledge is immaterial as far as charging the principal with it is concerned." (acting like an agent created an agency as a matter of law even though the agent and principal did not expressly intend to do so).

98. See also 1980's *Soper v. Knaflich*[15] "Ordinarily, an agent does have a fiduciary duty to his principal to report information that he receives affecting his principal's interests. The knowledge of an agent will be imputed to his principal . . . We have repeatedly held that a prerequisite of an agency is control of the agent by the principal."

99. Pinnacle controlled if Tony was able to communicate with visitors of Pinnacle's website.

100. Pinnacle controlled if Tony was presented as an agent of Pinnacle's.

101. Pinnacle controlled if Tony had any presence whatsoever on Pinnacle's website.

102. Even if Tony was somehow a rogue agent in the matter, lining his own CD-tray at Pinnacles' expense, the adverse interested exception would protect Barton as an innocent third party "Nevertheless, notice is imputed ... when necessary to protect the rights of a third party who dealt with the principal in good faith."[16]

103. Something caused Tony to believe Pinnacle had scheduled an appointment with Barton so he advised Barton to call 770 343 6181.

104. Tony closed out the conversation with: "You're welcome. Thank you for contacting Pinnacle Home Improvements."

---

[15] *Soper v. Knaflich*, 26 Wn. App. 678, 681 (Wash. Ct. App. 1980) DIV 1

[16] *Chinacast Educ. Corp. v. Chinacast Educ. Corp.*, 809 F.3d 471, 476 (9th Cir. 2015)



NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

105. On September 25, 2023, Pinnacle represented to the public that Tony was a real person.

106. On September 25, 2023, Pinnacle represented to the public that Tony had the actual authority to act as a communications agent for Pinnacle.

107. On September 25, 2023, Pinnacle represented to the public that Tony had the apparent authority to act as a communications agent for Pinnacle.

108. On September 25, 2023, Pinnacle wanted visitors to its website *www.pinnaclehomeimprovements.com* to believe that Tony was a communications agent for Pinnacle.

109. Pinnacle believed that it would gain business by using Tony as a communications agent.

110. Pinnacle believed it would gain additional goodwill of visitors to its website *www.pinnaclehomeimprovements.com* by using Tony as an agent.

111. Pinnacle believed it would gain additional goodwill of visitors to its website *www.pinnaclehomeimprovements.com* by presenting Tony as a live person.

112. The FCC has ruled that consent may be revoked at any time and through any reasonable means. ("a called party may revoke consent at any time and through any reasonable means. A caller may not limit the manner in which revocation may occur"). *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) see also *Rodriguez v. Premier Bankcard, LLC*, No. 3:16CV2541, 2018 WL 4184742 (N.D. Ohio Aug. 31, 2018)[17]; see also *Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1275, 1280 (11th Cir. 2017)[18].

---

17 https://casetext.com/case/rodriguez-v-premier-bankcard-llc

18 https://casetext.com/case/schweitzer-v-comenity-bank-1


NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

113. On September 25, 2023, Pinnacle knew or should have known that consumers would perceive Tony as a reasonable means to communicate a *do-not-call* request to Pinnacle.

114. On September 25, 2023, Barton perceived Tony to be a reasonable means to communicate a *do-not-call* request to Pinnacle.

115. Pinnacle now alleges that Tony is and was always "an actor's face" but "there's no human to interact with . . . Instead, the program looks for key words in the message entered and provides pre-programmed responses to simple questions."

116. On September 25, 2023, if this representation to the public that Tony was a real human was false, Pinnacle knew that its representation to the public that Tony was a live person was false.

117. If Tony is a program that "looks for key words in the message entered and provides pre-programmed responses to simple questions" then Pinnacle's representation that Tony was a live human was false.

118. Pinnacle knew or should have known that someone in Barton's position may well communicate a do-not-call request to Tony.

119. Pinnacle intended that someone in Barton's position would communicate a do-not-call request to Tony.

120. Barton was fooled, he had no idea that Tony might not be a human.

121. Barton relied on Tony's "Understood." to mean Barton's message was communicated to Pinnacle.

122. Barton had a right to rely on "Understood." to mean Barton's message was communicated to Pinnacle.



NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

123. Pinnacle now argues that they successfully fooled Barton into giving the message to Tony, and as a result of Barton's reliance on his communication to Tony and the subsequent lawsuit in Washington State, Barton owes Pinnacle for legal fees.

124. On 2/4/2024 Barton visited website *www.pinnaclehomeimprovements.com*.

125. He repeated the process of using Pinnacle's chat box.

126. That day he spoke with an agent calling herself "Camelia".

127. Pinnacle represented that Camelia was a live person in every way they represented Tony to be a live person, except they used the picture of a lady's face for Camelia.

128. Barton asked Camelia: "You are a live person?"

129. Camelia responded: "Yes, I am a real person and this is a live chat. Which of our products/services are you interested in?"

130. Barton responded: "So Keith Scully is not being honest when he says this chat tool is run by a robot?"

131. Camelia responded: "I understand and I am a real person. May I have your name please?".

132. Barton responded: "If I ask you to put my phone number (972) 207-5749 on your do not call list because I do not want your phone calls, what will you do with this request?"

133. Camelia responded: "I sincerely apologize for the inconvenience. I will submit a no-contact request for you. May I have your name please?"

134. Barton responded: "Nathen Barton and I live in Washington State".

135. Camelia responded: "Okay, Nathen, I have forwarded your information to our office. Is there anything else I can help you with?"



NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

136. Barton responded: “Is this chat always staffed with live people or sometimes is it run by a robot?”

137. Camelia responded: “This chat is 24/7 and all the time you will find a live chat representative available.”

138. As of 2/15/2024, Pinnacle still holds its chat agents out to the public as live humans.

139. Pinnacle has ratified the public announcement on their website *www.pinnaclehomeimprovements.com* that Tony was a human being.

140. Tony, like Camelia, could have and did or should have submitted a no-contact request on Barton’s behalf.

141. It is irrelevant if Tony is real or electronic.

142. The Uniform Electronic Transactions Act is also the law in Washington State.

143. The Uniform Electronic Transactions Act is also the law in Georgia.

144. RCW 1.80.010 defines “Electronic Agent” as “a computer program or an electronic or other automated means used independently to initiate an action or respond to electronic records or performances in whole or in part, without review or action by an individual.”

145. RCW 1.80.130 says “In an automated transaction, the following rules apply:”

146. “(1) A contract may be formed by the interaction of electronic agents of the parties, even if no individual was aware of or reviewed the electronic agents' actions or the resulting terms and agreements.”

147. “(2) A contract may be formed by the interaction of an electronic agent and an individual, acting on the individual's own behalf or for another person, including by an interaction in which the individual performs actions that the individual is free to refuse to perform and



NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

which the individual knows or has reason to know will cause the electronic agent to complete the transaction or performance."

148. "(3) The terms of the contract are determined by the substantive law applicable to it."

149. In Washington State, Electronic Agents are fully capable of binding their respective principles even if no human is involved at all.

150. Pinnacle claiming they are not responsible for Tony because he is a computer chat bot is similar to lawsuit *Moffatt v. Air Canada*, 2024 BCCRT 149 (CanLII).[19]

151. In November 2022, following the death of his grandmother, Jake Moffatt booked a flight with Air Canada.

152. While researching flights, Mr. Moffat used a chatbot on Air Canada's website.

153. The chatbot suggested Mr. Moffatt could apply for bereavement fares retroactively. Mr. Moffatt later learned from Air Canada employees that Air Canada did not permit retroactive applications.

154. While Air Canada did not provide any information about the nature of its chatbot, generally speaking, a chatbot is an automated system that provides information to a person using a website in response to that person's prompts and input.

155. The parties implicitly agree that Mr. Moffatt was not chatting with an Air Canada employee.

156. An Air Canada representative admitted the chatbot had provided "misleading words."

157. Air Canada argued it cannot be held liable for information provided by one of its chatbot.

158. Air Canada did not explain why it believes that was the case.

159. The court found that:

---

[19] *Moffatt v. Air Canada*, 2024 BCCRT 149 (CanLII)



NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

160. “In effect, Air Canada suggests the chatbot is a separate legal entity that is responsible for its own actions. This is a remarkable submission. While a chatbot has an interactive component, it is still just a part of Air Canada’s website. It should be obvious to Air Canada that it is responsible for all the information on its website. It makes no difference whether the information comes from a static page or a chatbot.”

161. Air Canada was laughed out of court.

162. Attorney Steve Lehto, who has been practicing law for 32 years, called this “among the dumbest (legal) defenses I’ve ever heard raised in any case”.[20]

163. Likewise, here Tony was part of Pinnacle’s website and Pinnacle is responsible for Tony.

**Unsolicited Text Message #9**

164. On 9/26/2023, at 6:21am, Defendants initiated or substantially assisted in transmitting a text message to Plaintiff’s cell phone from phone number (678) 605-9490. The message said:

165. “Would another day work better for you?”

166. The purpose of the text message was to encourage Plaintiff to purchase window or window replacement related goods or service.

167. Pinnacle knew Barton was “in Washington State” when they sent this text message to Barton.

168. Pinnacle knew Barton asked to be placed on Pinnacle’s do-not-call list prior to them sending this text message to Barton.

**Unsolicited Call #10 and DNC #2**

[20] https://www.youtube.com/watch?v=C0WJ6OisKQ8



NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

169. On 9/26/2023, at 8:06am, Defendants or their agent initiated a call to Plaintiff's cell phone from phone number (423) 460-9248. A Cathy with Pinnacle Home Improvements asked for a "Melissa". Barton told her there was no Melissa at this number and asked Cathy to put his phone number on their *do-not-call* list. Melissa did not hang up within ten seconds of Barton telling Cathy she had a wrong number.

170. Pinnacle knew Barton was "in Washington State" when they sent this text message to Barton.

171. Pinnacle knew Barton asked to be placed on Pinnacle's do-not-call list prior to them sending this text message to Barton.

**Unsolicited Text Message #11**

172. On 9/27/2023, Defendants initiated or substantially assisted in transmitting a text message to Plaintiff's cell phone from phone number (678) 605-9490. The message said:

173. "Sorry is this Melissa? Just want to make sure I'm contacting the right person about the window replacement project."

174. The purpose of the text message was to encourage Plaintiff to purchase window or window replacement related goods or service.

175. Pinnacle knew Barton was "in Washington State" when they sent this text message to Barton.

176. Pinnacle knew Barton asked to be placed on Pinnacle's do-not-call list prior to them sending this text message to Barton.

**Unsolicited Text Message #12**

177. On 9/29/2023, Defendants initiated or substantially assisted in transmitting a text message to Plaintiff's cell phone from phone number (678) 605-9490. The message said:


NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

178. “Just curious… Are you still interested in a window replacement estimate?”

179. The purpose of the text message was to encourage Plaintiff to purchase window or window replacement related goods or service.

180. Pinnacle knew Barton was “in Washington State” when they sent this text message to Barton.

181. Pinnacle knew Barton asked to be placed on Pinnacle’s do-not-call list prior to them sending this text message to Barton.

**Unsolicited Text Message #13**

182. On 10/2/2023, at 7:30am, Defendants initiated or substantially assisted in transmitting a text message to Plaintiff’s cell phone from phone number (678) 605-9490. The message said:

183. “Do you need to finance your window project? If so we can help!
1). Yes
2) No”

184. The purpose of the text message was to encourage Plaintiff to purchase window or window replacement related goods or service.

185. Pinnacle knew Barton was “in Washington State” when they sent this text message to Barton.

186. Pinnacle knew Barton asked to be placed on Pinnacle’s do-not-call list prior to them sending this text message to Barton.

**Defendants are Annoying the Public**

187. The phone ringing and dinging is obnoxious, an invasion of Plaintiff’s privacy, a trespass into Plaintiff’s property and seclusion, and a waste of time. Answering or looking at text


NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

messages takes time that could be spent doing other things, and these calls do have a real, if small, cost in electricity and life of the phone.

## V. RELIEF

### Federal Law

188. Plaintiffs phone number at issue was at all relevant times registered on the FTC *do-not-call* list more than 30 days before the alleged solicitations. Plaintiff does not have any relationship with the Defendants by which they could legally phone solicit Plaintiff for any reason.

189. Defendants violated the regulations governing the TCPA, 47 C.F.R § 64.1200, and TCPA 47 U.S.C. 227(c) by texting Plaintiff's cellular telephone numbers without invitation or consent when those numbers was registered on the FTC's National *do-not-call* registry more than 30 days prior to each call.

190. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id*. at § 64.1200(d)(4).

191. "The FCC clarified that providing a d/b/a in a telemarketing message is permissible, but it is insufficient to fully comply with Section 64.1200(d)(4)" *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1185 (D. Utah 2021)

192. Defendant violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to Plaintiff while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being


NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

made, and a telephone number or address at which the person or entity may be contacted."

**Washington State Law**

**RCW 80.36.390**

193. Washington State RCW 80.36.390(6) says

194. If, at any time during the telephone contact, the called party states or indicates they want to end the call, the telephone solicitor must end the call within 10 seconds.

195. Barton told Pinnacle that he wanted to end the call and they did not end the call within 10 seconds.

196. Washington State RCW 80.36.390(7) says

197. If, at any time during the telephone contact, the called party states or indicates that he or she does not want to be called again by the telephone solicitor or wants to have his or her name, individual telephone number, or other contact information removed from the telephone lists used by the telephone solicitor:

(a) The telephone solicitor shall inform the called party that his or her contact information will be removed from the telephone solicitor's telephone lists for at least one year;

(b) The telephone solicitor shall end the call within 10 seconds;

(c) The telephone solicitor shall not make any additional telephone solicitation of the called party at any telephone number that the called party has requested be removed from the solicitor's telephone lists for a period of at least one year;

198. Barton told Pinnacle that he did not want to be called again and wanted his phone number removed from their calling list. Pinnacle did not inform Barton that his contact information would be removed for at least one year.

199. Washington State RCW 80.36.390(8) says



NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

200. A telephone solicitor shall not place calls to any person which will be received before 8:00 a.m. or after 8:00 p.m. at the call recipient's local time.

201. Pinnacle called Barton after 8pm but before 8am.

202. Washington State RCW 80.36.390(9) says

203. No person may initiate, or cause to be initiated, a telephone solicitation to a telephone number registered on the do not call registry maintained by the federal government pursuant to telephone consumer protection act, 47 U.S.C. Sec. 227 and related regulations, as currently enacted or subsequently amended. This subsection applies to all telephone solicitation intended to be received by telephone customers within the state.

204. The Defendants initiated calls to Barton’s cell phone number while it was registered on the do not call registry maintained by the federal government pursuant to telephone consumer protection act, 47 U.S.C. Sec. 227 and related regulations. They did so knowing that Barton resided in Washington State.

**RCW 19.190**

205. Washington State RCW 19.190.060(1) prohibits anyone conducting business in Washington State from initiating or assisting in the transmission of an electronic commercial text message to a telephone number assigned to a Washington state resident’s cell phone.

206. The Washington State legislature determined that “[d]amages to the recipient of a . . . commercial electronic text message sent in violation of this chapter are five hundred dollars, or actual damages, whichever is greater.” RCW 19.190.040(1).

207. The Washington State legislature clearly stated that the sending of an email message prohibited by CEMA is a violation of the Consumer Protection Act (RCW 19.190.030(1))


NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

208. The legislative history of RCW 19.190 states that the recipient of both commercial email messages and commercial text messages "may bring a civil action against the sender for the greater of $500 or actual damages." Wash. Final Bill Rep., 1998 Reg. Sess. H.B. 2752 (Apr. 6, 1998); Wash. Final Bill Rep., 2003 Reg. Sess. H.B. 2007 (June 27, 2003). Having now determined that there is no private right of action under CEMA, the only way to give effect to the legislature's stated intent is to construe the liquidated damages provision as establishing the injury and causation elements of a CPA claim. *Gragg v. Orange Cab Company et al*, No. 2:2012cv00576 - Document 162 (W.D. Wash. 2015)[21]

**Common Law Fraud**

209. Pinnacle held Tony out as a live human being and a communications agent of Pinnacle.

210. If Tony turns out to be a computer, and this fact materially injures Barton in this lawsuit, Pinnacle has committed common law fraud against Barton.

211. Pinnacle seeks damages against Barton because of this misrepresentation.

212. Pinnacle damaged Barton with their fraudulent representation that Tony was a capable communications agent for Pinnacle.

**RCW 19.86**

213. Pinnacle held Tony out to Barton as a live human being and a communications agent of Pinnacle.

214. If Tony turns out to be a computer, and this fact materially injures Barton in this lawsuit, that is an unfair or deceptive trade practice.

215. Pinnacle damaged Barton with their fraudulent representation that Tony was a capable communications agent for Pinnacle.

[21] https://cases.justia.com/federal/district-courts/washington/wawdce/2:2012cv00576/183407/162/0.pdf?ts=1447174101


NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

## Common Law Negligent Misrepresentation

216. Pinnacle used their website and Tony to represent to Barton that he could communicate with Pinnacle via Tony.

217. Pinnacle knew that Tony was not a live human being.

218. Pinnacle knew that they did not consider Tony to be an agent Barton could use to communicate with Pinnacle.

219. Pinnacle intended Barton to believe he could use Tony to communicate with Pinnacle.

220. Barton believed that representation and communicated with Tony a *do-not-call* request and Barton's location.

221. Barton was injured by their misrepresentation.

## Treble Damages

222. Plaintiff believes the record shows that Defendants' violations of the law were willful or knowing.

223. They violated the *do-not-call* regulations and continued calling after being told Barton wanted his number to be added to their do-not-call list.

224. Other consumers have similar complaints about unwanted calls from Pinnacle.

225. On Pinnacle's Better Business Bureau website there is a complaint dated 8/14/2023:[22]

> David B
>
> ★☆☆☆☆ 08/14/2023
>
> I was awoken by an unsolicited text at 4am today stating that I will be contacted about ******* request. They are fishing for customers. And at 4am. I called, they stated its an automatic system and they can't do anything about it. Apparently my work request was a bathroom remodel, I have already remodeled every bathroom in the house, so this is not a request anyone in the household would inquire about anywhere. 5am is too early for just contact from any company.

226.

[22] https://www.bbb.org/us/ga/alpharetta/profile/roofing-contractors/pinnacle-home-improvements-llc-0443-27264647/customer-reviews

227. Pinnacle responded to David B on 8/18/2023:

> **Pinnacle Home Improvements, LLC Response** 08/18/2023
>
> We understand how unsettling such an event can be, and we regret any inconvenience or disturbance this may have caused.
>
> After receiving the complaint, we contacted the individual and conducted a thorough investigation into the matter. Our findings revealed that someone has falsely used our name and contact information for their marketing campaign. We do not sell or install interior remodeling, particularly bathroom projects, and we do not engage in sending unsolicited texts to potential customers.
>
> At Pinnacle, we hold ourselves to strict standards when it comes to customer communication. We only contact individuals during appropriate hours and never engage in unsolicited outreach. This feedback was invaluable to us, and it reinforces the importance of our commitment to respectful and ethical marketing practices. Thank you for bringing this matter to our attention.

228.

229. On Pinnacle's Better Business Bureau website there is a complaint dated 11/14/2023:[23]

> **Initial Complaint**
> 11/14/2023
>
> **Complaint Type:** Problems with Product/Service
> **Status:** Answered
>
> They got my phone number and will not quit harassing me. They have called me every day 10 times a day. I have told them numerous times to stop calling me and quit harassing me and they are still doing it every single day.

230.

231. Pinnacle responded to this complaint on 11/14/2023:

> **Business response**
> 11/16/2023
>
> We have called to apologize for any inconvenience caused by the unintended multiple calls. (Not surprisingly) we were not able to get in touch with this individual. We have investigated and can confirm only six calls from our end. Nonetheless, we understand the frustration and have taken immediate steps to resolve this issue - he will no longer receive any calls from us. This was unintentional, and there is no benefit for us to invest time and money calling individuals who are not interested in our services.

232.

233. Therefore, Plaintiff asks for treble damages under TCPA 47 U.S.C. 227(c)(5).

[23] https://www.bbb.org/us/ga/alpharetta/profile/roofing-contractors/pinnacle-home-improvements-llc-0443-27264647/complaints



NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

**Injunctive Relief**

234. TCPA 47 U.S.C. 227(c)(5)(A) allows “an action based on a violation of the regulations prescribed under this subsection to enjoin such violation”.

235. Plaintiff’s phone number was registered on the FTC’s National Do Not Call registry, yet he was solicited by Defendants.

236. It is reasonable to believe that Defendants have done this many times in the past and will continue harming the residents of this State and other States in the future.

237. Plaintiff asks this Court to enjoin the Defendants from violating the TCPA.

**All other such Relief**

238. Plaintiff prays for all possible statutory damages, that he might entitled too. Barton also asks for court costs, attorney fees (should he retain an attorney to represent him in this lawsuit), pre-judgement interest, and post-judgement interest.

___________________________________

(Nathen Barton)

Nathen Barton
bluewind33@protonmail.com
(469) 347-2139
4618 NW 11th Cir
Camas WA 98607