UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHEN W BARTON, | Case No. 3:24-cv-05142-TMC |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS AND MOTION FOR RULE 11 SANCTIONS |
| v. | |
| PINNACLE HOME IMPROVEMENTS LLC; JOHN DOE 1-10, | |
| Defendants. | |

## I.    INTRODUCTION

Pro se Plaintiff Nathen Barton filed this lawsuit alleging that Defendant Pinnacle Home Improvements LLC, a window company based in Georgia, sent him unwanted marketing text messages and phone calls in violation of state and federal law. Dkt. 1-1. Pinnacle has moved to dismiss, arguing it is not subject to personal jurisdiction in this district because it did not purposefully direct the messages at Washington state. Dkt. 7. Mr. Barton responds that at least some of Pinnacle's messages were directed at Washington, because after receiving the first unwanted texts, he visited Pinnacle's website and—through a "live chat" feature, which represented to the public that it was "a Live Person here to help"—told Pinnacle he was in Washington and did not want to be called. Pinnacle admits its website stated the chat was

ORDER DENYING MOTION TO DISMISS AND MOTION FOR RULE 11 SANCTIONS - 1

manned by a live person. But Pinnacle maintains that since this was not in fact true—instead, the "live chat" was a chatbot designed to "mimic" a person "because consumers want to believe they are receiving personal attention"—it should not be charged with knowledge of what Mr. Barton communicated through the chat. Because a reasonable person would believe the live chat was an effective way to communicate with Pinnacle, the Court concludes Pinnacle knew or should have known the substance of Mr. Barton's communication, and Pinnacle's telemarketing messages to him after that point were purposefully directed at Washington state. The Court therefore DENIES Pinnacle's motion to dismiss for lack of personal jurisdiction (Dkt. 7) but also DENIES Mr. Barton's motion for sanctions under Federal Rule of Civil Procedure 11 (Dkt. 14).

## II.  BACKGROUND

Mr. Barton is a Washington resident whose phone number is on the Federal Trade Commission's National Do Not Call Registry.[1] Dkt. 1-1 ¶¶ 10, 14. Pinnacle asserts that on September 23, 2023, it acquired a lead for someone named Melissa Porter, who filled out a form indicating interest in Pinnacle's services from an IP address in Georgia; she provided her email address and Mr. Barton's phone number as her contact information. *Id.* ¶¶ 19–23; Dkt. 8 at 2; 8-1. This number is "used as a residential phone line and paid for by Barton." Dkt. 1-1 ¶ 13.

Mr. Barton did not have phone or internet service on September 23rd, but when he returned to service the following day, he received a series of text messages and phone calls from Pinnacle. Dkt. 1-1 ¶¶ 28–51. On September 25th, after receiving eight texts and calls from Pinnacle, Mr. Barton visited Pinnacle's website, and clicked a link to open a "Live Chat." *Id.*

---

[1] Much of Pinnacle's motion is devoted to denigrating Mr. Barton as a "professional plaintiff" who "makes his living off TCPA cases" and speculating that his claim is manufactured. *See* Dkt. 7 at 3. If Pinnacle establishes through discovery that Mr. Barton has done something improper, it may bring that to the Court's attention. For now, these arguments are irrelevant to this motion and to the Court.

ORDER DENYING MOTION TO DISMISS AND MOTION FOR RULE 11 SANCTIONS - 2

¶ 75; Dkt. 11 ¶ 4. Text above the link read: "Hello. Welcome to Pinnacle Home Improvements! I am a Live Person here to help." Dkt. 11 ¶ 3. A photo of a person's face labeled "Online Agent" appeared below the link. *Id.* The link opened a chat window that said "Chatting with Tony" and stated that "[t]his chat transcript will be saved and viewed by Pinnacle Home Improvements and/or those working on its behalf." *Id.* ¶ 5. The first two messages from "Tony" read "Hello. Welcome to Pinnacle Home Improvements! I am a Live Person here to help." *Id.* Mr. Barton requested to be placed on Pinnacle's do-not-call list: "Hello, please put 972 207 5749 on your do not call list. I am in Washington State so can't use your services." *Id.* "Tony" responded "I understand. I'm sorry, while we are not able to cancel or reschedule appointments online, you can give us a call directly and our team will be able to take care of this for you. We can be reached at 770-343-6181." *Id.* ¶ 6.

Mr. Barton received a text and a call the day after sending this request and informing Pinnacle of his location in Washington. Dkt. 1-1 ¶¶ 164–71. He answered the call and again requested to be placed on Pinnacle's do-not-call list. *Id.* ¶ 169. He received three additional text messages after making his second do-not-call request. *Id.* ¶¶ 172–86. Mr. Barton did not respond to any of Pinnacle's text messages. Dkt. 9-2 at 2–5.

### III.  DISCUSSION

**A.  Legal Standard:  Motion to Dismiss for Lack of Personal Jurisdiction**

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). To do so, they "need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ("[I]f a plaintiff's proof is limited to written materials, it is necessary only for these

materials to demonstrate facts [that] support a finding of jurisdiction in order to avoid a motion to dismiss."). In reviewing the motion, the court accepts "as true all uncontroverted allegations in the complaint." *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020). If the defendant comes forward with a "contradictory affidavit, the plaintiff cannot simply rest on the bare allegations of its complaint." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (citation and internal quotations omitted). However, "[i]f both sides submit affidavits, then '[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)); *see Global Commodities*, 972 F.3d at 1106 ("In this posture, we . . . resolve all genuine factual disputes in the plaintiff's favor."). Moreover, "any evidentiary materials submitted on the motion are construed in the light most favorable to the plaintiff and all doubts are resolved in [their] favor." *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002) (citation and internal quotations omitted).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *CollegeSource, Inc.*, 653 F.3d at 1073 (citing Fed. R. Civ. P. 4(k)(1)(A)). "Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits." *Microsoft Corp. v. Commc'ns & Data Sys. Consultants, Inc.*, 127 F. Supp. 3d 1107, 1113 (W.D. Wash. 2015) (citing *Byron Nelson Co. v. Orchard Mgmt. Corp.*, 95 Wn. App. 462, 465, 975 P.2d 555 (1999)). Accordingly, "the jurisdictional analysis under state law and federal due process are the same." *Id.* (citing *Schwarzenegger*, 374 F.3d at 800–01); *see also Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 771–72, 783 P.2d 78 (1989).

ORDER DENYING MOTION TO DISMISS AND MOTION FOR RULE 11 SANCTIONS - 4

**B.      Pinnacle is subject to personal jurisdiction in Washington for Mr. Barton's claims.**

Under federal law, personal jurisdiction over a defendant satisfies due process if they "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). "[T]here are two forms that personal jurisdiction may take: general and specific." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Because Mr. Barton does not argue for general jurisdiction, the Court will only consider the propriety of specific jurisdiction.

The Ninth Circuit applies a three-prong test to determine whether a defendant had sufficient contacts with the forum state to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of establishing the first two prongs. *CollegeSource, Inc.*, 653 F.3d at 1076. If they succeed, the burden shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–78 (1985)).

*1.      Pinnacle purposefully directed its activities to Washington.*

The first specific jurisdiction prong may be analyzed under one of two tests: purposeful availment or purposeful direction. *See Schwarzenegger*, 374 F.3d at 802. "A purposeful availment analysis is most often used in suits sounding in contract," while "[a] purposeful direction analysis . . . is most often used in suits sounding in tort." *Id.* A purposeful direction

analysis is appropriate here because "TCPA actions are essentially tort claims." *See Komaiko v. Baker Techs., Inc.*, No. 19-cv-03795-DMR, 2020 WL 1915884, at *6 (N.D. Cal. Apr. 20, 2020) (cleaned up). Because Mr. Barton's state law claims also sound in tort and arise from Pinnacle's telemarketing, the Court applies the same analysis to those claims as well.

Courts analyze purposeful direction under the three-part "effects test" enumerated in *Calder v. Jones*, 465 U.S. 783, 787–90 (1984). Under the effects test, a plaintiff must show that a defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

Under the first prong, Mr. Barton must show that Pinnacle committed an intentional act. *Schwarzenegger*, 374 F.3d at 806. Calling and texting Mr. Barton's phone number was unquestionably an intentional act and Pinnacle does not argue otherwise. The first prong of *Calder* is satisfied.

Pinnacle challenges purposeful direction under the second and third prongs of *Calder*, arguing that Mr. Barton cannot show that "Pinnacle knew [Mr. Barton] was in Washington and directed its messages there." Dkt. 7 at 10. Under the second and third prongs of *Calder*, the non-forum defendant must have "expressly aimed" the intentional act at the forum state, causing harm that the defendant "knows is likely to be suffered in the forum state." *Axiom Foods*, 874 F.3d at 1069. "Express aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because 'the plaintiff cannot be the only link between the defendant and the forum.'" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Express aiming requires "'something more'—conduct directly targeting the forum." *Id.* (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011)).

ORDER DENYING MOTION TO DISMISS AND MOTION FOR RULE 11 SANCTIONS - 6

In TCPA actions, district courts in the Ninth Circuit have considered whether the caller "knew or should have known" the call or message would impact the forum state. *Abedi v. New Age Med. Clinic PA*, No. 1:17-CV-1618 AWI SKO, 2018 WL 3155618, at *5 (E.D. Cal. June 25, 2018) ("There is nothing before the Court that suggests in any way that [the defendant] either knew or should have known that its text messages were sent into California and received by a resident of Merced."); *see also Komaiko*, 2020 WL 1915884, at *6 ("[C]ourts have declined to find personal jurisdiction over TCPA defendants when they had no reason to know that their conduct would be felt in [the forum state]."). District courts have determined that an area code associated with the forum state gives a caller reason to know the call or message would have an impact in that state. *See, e.g.*, *Jackson v. Euphoria Wellness, LLC*, No. 3:20-CV-03297-CRB, 2020 WL 5366419, at *5–6 (N.D. Cal. Sept. 8, 2020) ("Because Euphoria had reason to know that this customer resided in California—both because of her California area code and her California address—and intentionally sent promotional messages to her forum-state phone number, Euphoria also had reason to know that any harms caused by the messages would likely be felt in California."); *Moser v. Health Ins. Innovations, Inc.*, 2018 WL 325112, at *4 (S.D. Cal. Jan. 5, 2018) ("The effects test is satisfied by a plaintiff's uncontroverted allegation that a defendant violated the TCPA by calling a phone number with a forum state area code."). Conversely, they have determined that a caller has no reason to know a call will impact the forum state where the plaintiff has an out-of-state area code, and the defendant has no other information about the plaintiff's residency or whereabouts. *See, e.g.*, *Abedi*, 2018 WL 3155618, at *5 (holding no purposeful direction where defendant texted number with out-of-state area code and nothing before the court suggested defendant should have known its messages were sent to forum state); *Komaiko*, 2020 WL 1915884, at *6 (holding defendant had no reason to

know its texts would be sent to forum state where plaintiffs provided numbers with out-of-state area codes).

Here, Mr. Barton's phone number does not have a Washington area code. Dkt. 10 at 3. But unlike the Plaintiffs with out-of-state area codes in *Komaiko* and *Abedi*, Mr. Barton informed Pinnacle that he was in Washington. Dkt. 10 at 3. Specifically, Mr. Barton told a chatbot on Pinnacle's website to "please put 972 207 5749 on your do not call list. I am in Washington State so can't use your services." *Id.* Once Mr. Barton sent this message, Pinnacle had reason to know that calls and texts to Mr. Barton's 972 number would be sent into Washington, and thus that the effects of calls to Mr. Barton would be felt in Washington.

Pinnacle argues that Mr. Barton cannot show Pinnacle knew he was in Washington because he sent his message to a chatbot and "submitting information on a website" does not "equate[] to actual knowledge." Dkt. 7 at 10–11. But as Mr. Barton points out and Pinnacle admits, Pinnacle intentionally misleads consumers into believing that they are communicating with a real person when they message the chatbot. Dkt. 10 at 4–7; Dkt. 13 at 4. The link to chat with an agent states "I am a Live Person here to help," and uses a photo of a human. Dkt. 10 at 2. Clicking the link opens a chat that begins with the same message: "I am a Live Person here to help," and features a name and photo, ostensibly of the human with whom the consumer is chatting. *Id.* The chatbot window also includes a message that "[t]his chat transcript will be saved and viewed by Pinnacle Home Improvements and/or those working on its behalf," informing the consumer that, regardless of whether the chatbot agent is a live person, Pinnacle would save a record of the transcript and a person would review it. *Id.* And when Mr. Barton later returned to Pinnacle's website and asked a different chatbot agent, "Carmelia," whether it was a real person, "Carmelia" answered: "this chat is 24/7 and all the time you will find a live representative available." Dkt. 11 ¶ 12; Dkt. 13 at 3. Pinnacle admits that "[t]he chatbot is

programmed to mimic a real person because consumers want to believe they are receiving personal attention." Dkt. 13 at 4.

Pinnacle effectively argues that even though its chatbot is designed to mislead consumers into thinking they are communicating with a person, Pinnacle should not be charged with knowledge of information consumers communicate to it in reliance on those misrepresentations because they are *actually* communicating with a chatbot. Dkt. 13 at 2–4. The Court disagrees. Pinnacle presented the chatbot as a real person and informed users that it would save and review the chat transcript. A reasonable person visiting Pinnacle's website would believe the chatbot was an effective way to communicate with the company. Pinnacle thus can be charged with knowledge of information Mr. Barton communicated to the chatbot, including that he requested to be added to the do-not-call list and that his 972 number is associated with Washington.

After Barton told Pinnacle's chatbot he was in Washington and did not wish to receive any more calls, Pinnacle knew or should have known that any future calls or texts to his 972 phone number were directed at Washington. All three prongs of the purposeful direction *Calder* test are satisfied, and Mr. Barton has thus met the first prong for specific jurisdiction with respect to Pinnacle's texts and calls *after* Mr. Barton's September 25th chatbot conversation. The Court does not have personal jurisdiction over claims arising from the calls and texts sent before this conversation because nothing in the record suggests Pinnacle had reason to know Mr. Barton was in Washington until he informed the chatbot.

　　　　2.　　*Mr. Barton's claims arise out of or relate to Pinnacle's forum activities.*

The second prong of the specific jurisdiction test requires the Court to determine whether the claims at issue arose out of or relate to Pinnacle's forum contacts. *Yamashita*, 62 F.4th at 504. "[F]or a claim to arise out of a defendant's forum contacts requires" a showing of but-for causation. *Id.* at 504–06.

Here, Pinnacle's contacts with Washington were but-for causes of his claims; had Pinnacle not called and texted Mr. Barton in Washington, he would not have claims under the TCPA or state law.

      3.     *Exercise of jurisdiction over Pinnacle is reasonable.*

Because Mr. Barton has established the first two prongs, the burden shifts to Pinnacle to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource, Inc.*, 653 F.3d at 1076.

> [Courts] consider the following seven factors when making this determination: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

> [I]t is not enough that the [defendant] demonstrate that some other forum is more reasonable than [the forum state], it must show a due process violation; it must show that jurisdiction in [the forum state] would make the litigation "so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent."

*Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) (quoting *Burger King*, 471 U.S. at 478).

Pinnacle does not argue that jurisdiction would be unreasonable or point to anything in the record showing that jurisdiction in Washington "would make the litigation 'so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.'" *Id.* All three prongs of the specific jurisdiction test are satisfied.

**C.**    **Legal Standard: Mr. Barton's Motion for Rule 11 Sanctions**

Rule 11 authorizes courts to impose sanctions to "deter baseless filings and curb abuses." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 553 (1991). "An attorney is subject to Rule 11 sanctions, among other reasons, when he presents to the court 'claims,

defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]'" *Holgate v. Baldwin*, 425 F.3d 671, 675–76 (9th Cir. 2005) (quoting Fed. R. Civ. P. 11(b)(2)). "A party violates Federal Rule of Civil Procedure 11(b) by submitting pleadings for an improper purpose or making claims or factual contentions without legal or evidentiary support." *Simmonds v. Credit Suisse Sec. (USA) LLC*, No. C12-1937-JLR, 2013 WL 2319401, at *2 (W.D. Wash. May 28, 2013). Rule 11 sanctions are "an extraordinary remedy" and thus "reserved for the rare and exceptional cases where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Lee v. Pow Ent., Inc.*, No. 20-55928, 2021 WL 5768462, at *2 (9th Cir. Dec. 6, 2021) (cleaned up).

**D.      Pinnacle's arguments are not frivolous under Rule 11.**

Mr. Barton moved for Rule 11 sanctions, arguing that Pinnacle's motion to dismiss is frivolous. Dkt. 14 at 8. Specifically, Mr. Barton contends that Pinnacle's chatbot "Tony" is a Pinnacle agent such that "Tony's" knowledge of Mr. Barton's address is imputed to Pinnacle. *See id.* at 8–11. He argues that Pinnacle is making a "foolish argument" by claiming "that just because they put Tony on their website and gave him the real or apparent authority to speak for Pinnacle, they are not responsible for him." *Id.* at 12. Mr. Barton seeks sanctions fining Pinnacle "at least $500 for the time Barton spent addressing their motion and to deter them from similar actions in the future." *Id.* at 13.

Pinnacle responds that its "motion to dismiss is based on long-standing traditional personal jurisdiction principles and cites binding Supreme Court and Ninth Circuit precedent and persuasive district court holdings." Dkt. 15 at 4. It argues that to establish personal jurisdiction, Mr. Barton must show that "Pinnacle intentionally targeted Washington," but "cannot because

Pinnacle did not know Barton was here." *Id.* Pinnacle requests that the Court award it attorney's fees for defending against the motion for sanctions. *Id.* at 5.

Although the Court denied Pinnacle's motion to dismiss, Pinnacle's arguments do not reflect frivolousness as required for Rule 11 sanctions. *Est. of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997); Fed. R. Civ. P. 11(b)(3). While unpersuasive, and perhaps lacking in common sense, Pinnacle's arguments were grounded in the *Calder* test and the legal standard for purposeful direction of activity into the forum state. The application of this standard to a TCPA lawsuit where a plaintiff communicated with a defendant's chatbot to stop unwanted calls appears to be a novel circumstance, and Mr. Barton fails to show that Pinnacle's personal jurisdiction arguments are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11(b)(2). He thus does not establish that Defendant's motion to dismiss is "clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose," such that this is an "exceptional case" in which Rule 11 sanctions are warranted. *See Lee*, 2021 WL 5768462, at *2. The Court denies Plaintiff's motion for sanctions (Dkt. 14) and denies Pinnacle's request for attorney's fees incurred in responding to the motion.

## IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. The Court DENIES Defendant Pinnacle's motion to dismiss for lack of personal jurisdiction (Dkt. 7). The Court has personal jurisdiction based on the calls and texts sent after Mr. Barton's first do-not-call request.

2. The Court DENIES Plaintiff Barton's motion for sanctions under Rule 11 (Dkt. 14).

Dated this 11th day of June, 2024.

                                        Tiffany M. Cartwright
                                        United States District Judge

ORDER DENYING MOTION TO DISMISS AND MOTION FOR RULE 11 SANCTIONS - 13